UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JAMES L. MOSS, M.D. | CIVIL ACTION NO. 10-0023 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| HARTFORD LIFE & ACCIDENT INSURANCE COMPANY, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss (Record Document 9) filed by Defendants Robert E. Redstone, Jr. and Redstone Security Agency, Inc. ("the Redstone Defendants"). The Redstone Defendants move for dismissal of the state law claims asserted against them by Plaintiff James L. Moss, M.D. ("Dr. Moss") on three grounds:  (1) Dr. Moss's state law claims are preempted by the Employee Retirement Income Security Act ("ERISA"); (2) his claims are perempted under Louisiana law; and/or (3) he is unable to state a claim against the Redstone Defendants under Louisiana law.  See id.  Dr. Moss opposed the motion.  See Record Document 15.  For the reasons which follow, the motion is **GRANTED**.

**BACKGROUND**

Dr. Moss is a medical doctor licensed to practice in the State of Louisiana.  See Record Document 1-2 at ¶ 2.  He is board certified and practicing in the surgical specialty of urology.  See id.  He is a co-owner and member of Regional Urology, L.L.C. ("Regional Urology").  See id. at ¶ 3.

Hartford Life and Accident Insurance Company and Hartford-Comprehensive Employee Benefit Service Company ("Hartford" or "the Hartford Defendants") issued a group disability insurance policy to Regional Urology under policy #GLT-344619 with an

effective date of June 1, 2006. See id. at ¶ 4. The policy included a schedule of benefits that included $15,000 monthly for total disability benefits. See id. at ¶ 5. Dr. Moss is a covered insured under the Hartford policy. See id. at ¶ 6. The Redstone Defendants sold the policy to Dr. Moss and Regional Urology. See id. at ¶ 25.

On February 6, 2008, Dr. Moss filed a claim for total disability benefits under the Hartford policy. See id. at ¶ 8. On May 27, 2009, Hartford denied Dr. Moss's claim for long term disability benefits under the Hartford policy. See id. at ¶ 20.

Dr. Moss filed the instant suit on December 2, 2009,[1] asserting claims against both the Hartford Defendants and the Redstone Defendants. See id. at ¶ 1. Dr. Moss alleged that the Hartford Defendants arbitrarily and capriciously refused to pay him disability benefits. See id. at ¶¶ 20-24. As to the Redstone Defendants, Dr Moss alleged:

> [Dr. Moss] shows that [the Redstone Defendants] misrepresented this policy at the time it was purchased and negligently failed to explain the policy provisions.
>
> [Dr. Moss] shows that [the Redstone Defendants] negligently failed to fulfill the duties and obligations owed to [him] and to Regional Urology by failing to accurately explain the terms and conditions of the policy of disability insurance as part of his "sales pitch" and by misrepresenting the manner in which the provisions would be interpreted and applied to the individual policy holders.

Id. at ¶¶ 26-27. Dr. Moss seeks damages from the Redstone Defendants in the alternative, stating:

> Alternatively, [Dr. Moss] prays for judgment in his favor and against the [Redstone Defendants] in a sum sufficient to fully and completely compensate [him] for all losses, injuries or other damage which he has suffered as a result of any misrepresentations or negligence on the part of

---

[1]This matter was removed to the United States District Court, Western District of Louisiana on January 7, 2010. See Record Document 1.

> the [Redstone Defendants] related to the sale of the [Hartford policy] which forms the basis of this litigation with legal interest thereon from date of judicial demand until paid and for all costs of these proceedings.

Id. at ¶ 28.

## LAW AND ANALYSIS

**I.  Rule 12(b)(6) Standard.**

In deciding a Rule 12(b)(6) motion to dismiss, the district court must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007). Notwithstanding, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. See id., citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. Yet, if the allegations set forth in the complaint, even if true, could not raise a claim of entitlement to relief, the court will expose the basic deficiency "at the point of minimum expenditure of time and money by the parties and the court." Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir. 2007).

**II.  ERISA Preemption.**

In his complaint, Dr. Moss alleged that while the Hartford policy is a group policy, "it was not part of an employee benefits package and thus not subject to ERISA." Record Document 1-2 at ¶ 28. However, Dr. Moss conceded this issue in his opposition, stating:

> Dr. Moss acknowledges that he is seeking claims for benefits under [a] group policy . . . and that the plan is governed by ERISA. Federal jurisdiction is proper as to the claim of Dr. Moss against [the Hartford Defendants] and the federal court may retain jurisdiction over the related state law claims that Dr.

Moss has asserted against [the Redstone Defendants].

Record Document 15 at 1-2. Dr. Moss argues against ERISA preemption of his related state law claims, maintaining that such claims are severable because he has alleged a factual basis for his state law claims against the Redstone Defendants separate and apart from his claim against Hartford. See Record Document 15 at 1-2.

The preemption clause in ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a) (expressly excepting two situations not applicable here). A state law cause of action relates to an employee benefit plan whenever it has "a connection with or reference to" such a plan. Rozzell v. Security Servs., Inc., 38 F.3d 819, 821, citing Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-2900 (1983). ERISA preempts state law causes of action if (1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries. See Hubbard v. Blue Cross & Blue Shield Ass'n, 42 F.3d 942, 945 (5th Cir. 1995). The language of the ERISA preemption clause is deliberately expansive, and has been construed broadly by federal courts. See Rozzell, 38 F.3d at 821.

Notwithstanding, "ERISA preemption is not limitless." Rozzell, 38 F.3d at 821. The Fifth Circuit has reasoned that "some state actions may affect employee benefits plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." Bullock v. The Equitable Life Assurance Society, 259 F.3d 395, 399. To determine if a state law claim is preempted by ERISA, courts must go beyond the words

in the complaint and consider the substance of the claims alleged. See Rozzell, 38 F.3d at 822.

Again, Dr. Moss has conceded that he is seeking claims for benefits under a group long term disability insurance policy that is governed by ERISA. The Court must now determine if Dr. Moss's state law claims for negligent misrepresentation against the Redstone Defendants relate to the group long term disability insurance policy by virtue of "a connection with or reference to" such plan. Rozzell, 38 F.3d at 821; see also Record Document 1-2 at ¶¶ 25-27.

The Redstone Defendants rely primarily on Blum v. Spectrum Restaurant Group, Inc., No. 02-92, 02-98, 2003 WL 1889036 (E.D.Tex. April 14, 2003), to support ERISA preemption of Dr. Moss's state law claims. In Blum, the court reasoned that the plaintiff's state law claims were not ERISA preempted:

> Perkins and Hubbard are inapplicable in the instant case. Mr. Blum was already a participant in the SRG Plan when the alleged misrepresentations occurred. Additionally, the alleged misrepresentations involve benefits supposedly owed to the Blums under the SRG Plan. Mrs. Blum alleges that CBC "advertised, marketed or brokered" life insurance benefits to the Blums, and that conduct did not involve any administrative activities under the SRG Plan. While CBC may have "advertised, marketed or brokered" life insurance benefits to the Blums, there is neither evidence of misrepresentations regarding advertising, marketing, or brokering, nor has the Plaintiff asserted such misrepresentations. ***The alleged fraud and misrepresentation dealt with the administration of the plan, not the solicitation of the plan.***

Blum, 2003 WL 1889036, *5 (emphasis added).

However, the Court finds Perkins v. Time Ins. Co., 898 F.2d 470 (5th Cir. 1990) to be more controlling, in part because the alleged misrepresentation in the instant matter occurred prior to the formation of the plan, i.e., during the "sales pitch," and not while Dr. Moss was already a plan participant. In Perkins, the Fifth Circuit stated:

> While ERISA clearly preempts claims of bad faith as against insurance companies for improper processing of a claim for benefits under an employee benefit plan . . . , and while ERISA plans cannot be modified by oral representations, . . . we are not persuaded that this logic should extend to immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation. Giving the ERISA "relates to" preemption standard its common-sense meaning, . . . we conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, "relates to" that plan only indirectly. A state law claim of that genre, which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA.

Id. at 473-474. Here, the substance of Dr. Moss's state law negligent misrepresentation claim against the Redstone Defendants is not "that [his] benefits under the plan were improperly denied," but rather that their misrepresentations induced his participation in the ERISA plan. Hubbard, 42 F.3d at 946. It is also of importance that Dr. Moss is suing the Redstone Defendants for pre-plan activity as third party sellers of insurance, not as principal ERISA entities. See id. at 946; see also Memorial Hosp. System v. Northbrook Life Ins. Co., 904 F.2d 236, 249 (5th Cir. 1990) ("[C]ourts are more likely to find that a state law relates to a benefit plan if it affects relations among the principal ERISA entities-the employer, the plan, the plan fiduciaries, and the beneficiaries-than if it affects relations between one of these entities and an outside party, or between two outside parties with only an incidental effect on the plan.").[2] It is true that resolution of Dr. Moss's state law

---

[2]In Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985 (10th Cir. 1999), the Tenth Circuit examined "cases in which an employer sued an insurance professional for misrepresentations that induced plan participation," referring to four circuits that "have held that ERISA does not preempt such claims." Id. at 991, citing Wilson v. Zoellner, 114 F.3d 713, 721 (8th Cir.1997) ("[W]e hold that ERISA does not preempt [plaintiff's] suit against [an insurance agent] for the Missouri state common-law tort of negligent misrepresentation."); Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1467 (4th

claim of negligent misrepresentation may entail some examination of the Hartford policy, as the representations made by the Redstone Defendants prior to the plan's creation will need to be compared to the actual language contained in the Hartford policy. Such examination is insufficient to support ERISA preemption, as the negligent misrepresentation claim's connection to or reference to the ERISA disability plan is "too tenuous, remote, or peripheral . . . to warrant a finding that the law 'relates to' the plan." Bullock, 259 F.3d at 399.

Allowing Dr. Moss's negligent misrepresentation claim to proceed is also consistent with the Congressional purpose behind ERISA, "that is, to protect the interests of employees and other beneficiaries of benefit plans and establish uniform standards regulating such plans." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 992-993 (10th Cir. 1999). Specifically, holding insurance professionals accountable for pre-plan misrepresentations "does not affect the administration of calculation of benefits, nor does it alter the required duties of plan fiduciaries." Id. at 992. Rather, to allow ERISA preemption of such claims would result in employees and other beneficiaries, whom Congress sought to protect, finding themselves unable to make informed choices regarding available benefit plans. See id. A state's attempt, through its promulgation of

---

Cir.1996) ("We hold that [plaintiff's] malpractice claim [against the insurance professionals] is not preempted because it does not 'relate to' an employee benefit plan within the meaning of ERISA's preemption provision"); Morstein v. National Ins. Serv., Inc., 93 F.3d 715, 723 (11th Cir.1996) (en banc) ("When a state law claim involves the reliance on an insurer's promise that a particular treatment is fully covered under a policy, ... a claim of promissory estoppel is not 'related to' the benefits plan."); Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir.1990) ("[W]e conclude that a claim that an insurance agent fraudulently induced an insured to surrender coverage under an existing policy, to participate in an ERISA plan which did not provide the promised coverage, 'relates to' that plan only indirectly.").

legal standards, to prevent sellers of goods and services, including benefit plans, from misrepresenting the scope of their services is "quite remote from the area which ERISA is expressly concerned." Id., citing Wilson v. Zoellner, 114 F.3d 713, 721 (8th Cir.1997).

Accordingly, Dr. Moss's state law negligent misrepresentation claims are not ERISA preempted. The Court will now proceed to analyzing such claims under Louisiana law.

### III.     Louisiana Law.

The Redstone Defendants also moved for dismissal of Dr. Moss's state law claims on the grounds that Dr. Moss's are perempted under Louisiana law and/or he failed to state a negligent misrepresentation claim against the Redstone Defendants under Louisiana law.

Louisiana Revised Statute 9:5606 provides, in pertinent part:

> A.     No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
>
> . . .
>
> D.     The one-year and three-year periods of limitation provided in Subsection A of this Section are ***peremptive periods*** within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

La.R.S. 9:5606 (emphasis added). "Public policy requires that rights to which peremptive periods attach are to be extinguished after passage of a specified period." Bel v. State Farm Mut. Auto. Ins. Co., 2002-1292 (La.App. 1 Cir. 2/14/03), 845 So.2d 377, 380. Thus,

nothing interferes with the running of a peremptive period and it may not be interrupted or suspended. See id. According to these principles, "if a claim of negligence [under Section 5606] is not filed within three years of the alleged [negligent] act, it is extinguished by peremption, regardless of whether or not it was filed within one year from the date of discovery." Id.

In his complaint, Dr. Moss alleged that the Redstone Defendants misrepresented the Hartford policy *at the time it was purchased* and negligently failed to explain the policy provisions. See Record Document 1-2 at ¶ 26 (emphasis added). He further alleged that the Redstone Defendants negligently failed to fulfill the duties and obligations owed to him and to Regional Urology by failing to accurately explain the terms and conditions of the policy of disability insurance *as part of the "sales pitch"* and by misrepresenting the manner in which the provisions would be interpreted and applied to the individual policy holders. Id. at ¶ 27 (emphasis added). Because Dr. Moss references Mr. Redstone's conduct at the time the insurance policy was purchased and during the sales pitch,[3] the first alleged act, omission, or neglect for purposes of Section 5606 occurred no later than June 1, 2006, when the Hartford policy became effective. It appears that Dr. Moss likely discovered Mr. Redstone's alleged act, omission, or neglect on May 27, 2009, when his claim for disability benefits was denied. Dr. Moss filed suit on December 2, 2009, within one year from the date of his discovery of Mr. Redstone's alleged negligence. However, pursuant to Section 5606(A), his action against the Redstone Defendants had to be "filed at the latest within three years from the date of the

---

[3]In his opposition, Dr. Moss references a meeting with Mr. Redstone "immediately before the disability policy at issue was initially effective." Record Document 15 at 4.

alleged act, omission, or neglect," i.e., within three years from June 1, 2006. Dr. Moss's suit was not filed until December 2, 2009.

In his opposition, Dr. Moss argues that his state law claims are not perempted under Section 5606's three year peremptive period due to a continuing tort theory. Specifically, he argued:

> Throughout the entire period during which the policy has remained in effect, Mr. Redstone remained the agent of Dr. Moss as to this policy and had an ongoing duty to correctly and appropriately advise him regarding all aspects of his disability insurance coverage. Every opportunity that Mr. Redstone missed to meet with Dr. Moss to reevaluate and discuss the terms and conditions of his disability policy while Dr. Moss continued to faithfully pay his premiums constitutes a ***continuing tort*** on the part of the Redstone Defendants and prevents the claim of Dr. Moss against them from being perempted by the provisions of LSA-R.S. 9:5606.

Record Document 15 at 4 (emphasis added).[4] In Bel v. State Farm Mut. Auto. Ins. Co., No. 2002-1292 (La.App.1 Cir. 2/14/03), 845 So.2d 377, the court examined the continuing tort theory in the context of Section 5606:

---

[4] While it is unclear, it appears that Dr. Moss may also be alleging that policy renewals could have restarted the peremptive period. It is well settled that mere "renewals of insurance policies generally do not operate to restart the peremptive period set forth in Section 5606." White v. Allstate Ins. Co., 513 F.Supp.2d 674, 681 (E.D.La. 2007); Biggers v. Allstate Insurance Co., 04-282 (La.App. 5 Cir. 10/26/04), 886 So.2d 1179, 1182-83. "In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages." Id., citing Biggers, 886 So.2d at 1182; see also Sonnier v. Louisiana Farm Bureau Mutual Ins. Co., 2005-1006 (La.App. 3 Cir. 3/1/06), 924 So.2d 419, 422 (a renewal may constitute a separate act if an insured requests specific coverage at the time of renewal). Courts must focus on "whether the actions of the insurance agent at the time of renewal can be construed to constitute an act separate from the initial policy procurement." Id., citing Gomez v. Allstate Ins. Co., No. 06-8274, 2007 WL 1166150, *2 (E.D.La. April 17, 2007). Here, any argument based on renewals is unpersuasive because Dr. Moss has failed to plead enough facts for this Court to determine if the actions of the Redstone Defendants at the time of renewal could be construed to constitute an act separate from the initial policy procurement.

> Because the time limitation in the instant case is peremptive, and the principle of continuing torts is a suspensive principle, ineffective against the effects of peremption, we find the continuing tort doctrine inapplicable to plaintiffs' claims.

Id. at 382; see also Saia v. Asher, 2001-1038 (La.App. 1 Cir. 7/10/02), 825 So.2d 1257, 1262 ("Plaintiffs' assertion that defendants' actions constituted a continuing tort thereby suspending 'prescription' is erroneous, as the time limitations provided by La. R.S. 9:5604 are peremptive and as such cannot be suspended. La. C.C. art. 3461."); Dauterive Contractors, Inc. v. Landry and Watkins, A Law Partnership, 01-1112 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242, 1259 (noting that continuous tortious conduct and continuous damages may suspend prescription, but the pertinent time limitation was peremptive, and peremption may not be suspended). Thus, under Louisiana law, the continuing tort theory is inapplicable to Dr. Moss's state law claims. The Motion to Dismiss is, therefore, **GRANTED** because Dr. Moss's state claims against the Redstone Defendants are perempted pursuant to Section 5606.[5]

## CONCLUSION

Based on the foregoing, the Court finds that Dr. Moss's state law claims are perempted by Louisiana Revised Statute 9:5606. Accordingly, the Motion to Dismiss filed

---

[5] This Court has held that Dr. Moss's state law claims against the Redstone Defendants are perempted under Louisiana law, specifically Section 5606. Accordingly, the Court did not reach the Redstone Defendants' alternative argument seeking dismissal of Dr. Moss's state law claims on the ground of failure to state a claim for negligent misrepresentation under Louisiana law.

by the Redstone Defendants is **GRANTED** and Dr. Moss's state law claims are **DISMISSED**.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 7th day of May, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE